STATE OF IOWA, appellee, v. CHARLES FREELAND, appellant.

No. 50953.

(Reported in 125 N.W.2d 825)

JANUARY 14, 1964.

Rothschild & Nadler, of Waterloo, for appellant.

Evan Hultman, Attorney General, John H. Allen, Assistant Attorney General, William C. Ball, County Attorney, and Charles Hinton, Assistant County Attorney, for appellee.

THORNTON, J.—Defendant appeals his conviction of breaking and entering contrary to section 708.8 of the 1962 Code of Iowa.

I. Defendant urges three errors for reversal. The first is the court erred in overruling his motion to suppress evidence. His argument here differs from the matters contained in his motion to suppress in the trial court. There he complained because the arrest and search were made without a warrant for either and such was in violation of the due process clause of the Fourteenth Amendment to the United States Constitution. The principal thrust of his argument here is directed to a failure to comply with sections 758.1 and 758.2, Code of Iowa, 1962. Section 758.1 in part provides, "When an arrest is made without a warrant, the person arrested shall, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county * * *." Section 758.2 provides for a hearing before the magistrate.

The testimony of the arresting officers shows they did not take defendant before a magistrate at that time but directly to the county jail. The arrest was made shortly after midnight

on Sunday morning, May 13, 1962. The principal difficulty with defendant's position is the evidence defendant wants suppressed is the fruits of the crime, candy bars and tools, found at his feet in the automobile in which he was seated at the time of his arrest.

The claimed unlawful detention did not result in any evidence now being used against him. The fact of unlawful detention alone, if such there be, has not in any case that has been called to our attention been held to entitle an accused to his freedom nor does it exclude evidence otherwise obtained. Unlawful detention is most frequently urged as excluding a confession obtained during the unlawful detention. As excluding the confession in the federal courts, see Mallory v. United States, 354 U. S. 449, 453, 77 S. Ct. 1356, 1359, 1 L. Ed.2d 1479; and as being an element to be considered in determining the voluntariness of the confession in state courts, see State v. Jones, 253 Iowa 829, 837, 113 N.W.2d 303; Culombe v. Connecticut, 367 U. S. 568, 81 S. Ct. 1860, 6 L. Ed.2d 1037; and State v. Keating, Wash., 378 P.2d 703. In such cases, however, "The critical period is that between arrest and confession. 'Detention *after* a confession plainly does not affect its admissibility.'" Jackson v. United States, 114 App. D. C. 181, 313 F.2d 572, 575.

It must follow the admissibility of evidence obtained prior to or at the commencement of the illegal detention is in no way affected.

II. The State's evidence does show the arrest of defendant and what is claimed to be a search are both legal.

The facts are, Mr. Tom Howard and Mr. George Joens, private citizens, saw an old model Dodge parked at the Bader Implement Company in LaPorte City at about midnight May 12, 1962. One of them approached the car and inquired as to what was wrong. The driver mumbled, there was another man lying in the back seat. Howard and Joens drove off. The Dodge drove by them and turned into Brown's Service Station. They reported the incident to the town marshal, Mr. Harold Burch. They advised the marshal the license plate was partially obscured by paint. Mr. Burch stopped the Dodge and requested Howard and Joens to check the Bader Implement Company.

They found a rear window broken in. They so advised the marshal. Then they contacted Mr. Harold Bader, the owner of the implement company.

The reason the marshal stopped the car was the license plate was painted over and there had been break-ins in the vicinity. He checked the drivers' licenses of the occupants of the Dodge. He recognized the name of the driver, Jack Weekly, from a list of parolees. He called the sheriff's deputies to check for a parole violation. When the deputies arrived the marshal went to the Bader Implement Company. He there found there had been a break-in. This information was immediately radioed to the deputies and they took defendant and Weekly into custody. The defendant was in the back seat of the Dodge, a two door. When defendant was taken from the car it was necessary to remove a box containing candy bars and hand tools. These were identified by Mr. Bader as being taken from his implement company.

It is apparent the marshal checked the drivers' licenses of Weekly and defendant and actually detained them while the implement company was being checked and he obtained the assistance of the deputies. This detention or arrest was for the purpose of investigation. This was proper. The car in which defendant was riding was parked near a warehouse near midnight. It moved to another location within a mile or mile and one half of the first. The license plate was partially painted over. There had been break-ins in the neighborhood. Under the circumstances it was reasonable for the marshal to make a reasonable investigation of this car and its occupants. He could not be expected to leave the car and its occupants and take time to obtain a warrant. He properly obtained help and when it was learned there had been a break-in the candy bars and tools taken were found in the back seat of the car, not found after a search; but in the process of taking defendant from the car the candy and tools were in plain sight. These were identified as stolen. There was probable cause. The deputies had reasonable grounds to believe an indictable offense had been committed and defendant had committed it. The arrest and search and seizure of the stolen property were valid. In fact there is no evidence to the

contrary. State v. Post, 255 Iowa 573, 582, 123 N.W.2d 11, 16, 17, and citations. In Bell v. United States, 102 App. D. C. 383, 254 F.2d 82, 87, is this concise statement by Judge Prettyman:

"The sum total of the reams that have been written on the subject is that a peace officer may arrest without a warrant when he has reasonable grounds, in light of the circumstances of the moment as viewed through his eyes, for belief that a felony has been committed and that the person before him committed it. We require police officers to be reasonable; we too must be reasonable."

■ Defendant also urges in connection with this assignment of error that the burden is on the State to prove the evidence used to prove the guilt of defendant was lawfully obtained when such issue is injected in the case by defendant. Here the State has done so. All of the evidence produced on the hearing to suppress shows the arrest was lawful. The only evidence then obtained was the fruits of the crime then in the possession of defendant. Property so found incident to a lawful arrest is lawfully obtained. State v. Post, 255 Iowa 573, 582, 123 N.W.2d 11, 17.

■ III. Defendant contends it was error for the trial court to overrule his motion to require the State to give him, or arrange for him to take, a polygraph test. In his motion he consented to taking the test. Orally on the hearing on the motion he consented in open court to the results of the test being admitted in evidence. Defendant's motion was filed September 18, 1962, the trial started October 10. It was on this date the motion was called to the attention of and presented to the court. The State resisted the motion as not being timely presented. The court overruled the motion, giving as its reason lack of authority to compel the State to furnish the test. The ruling might well have been based on the ground the motion was not timely presented. From the nature of the motion it would require time to arrange and complete the test. The defendant is bound to know this. When it was presented it would require the continuance of the trial to a later date to complete the test requested. No reason appears for the motion not being timely presented. In no case has a trial court in this country

ordered such a test. Here the State did not join in defendant's motion but resisted it. Defendant relies on State v. McNamara, 252 Iowa 19, 104 N.W.2d 568. There we held the results of a polygraph test admissible over the objections of the defendant. In McNamara the defendant arranged with the county attorney for the test in advance. It was agreed the examiner could testify to his opinion of the results. On that basis we held the evidence admissible. Defendant's position lacks the agreement of the State. We agree with the trial court he could not coerce the State into such an agreement. The authorities hold the tests are not admissible in absence of a stipulation. The reason given is the test has not as yet attained scientific acceptance as a reliable and accurate means of ascertaining truth or deception. Annotation, 23 A. L. R.2d 1308; State v. Green, 254 Iowa 1379, 1383, 1384, 121 N.W.2d 89, 91; People v. Boney, 28 Ill.2d 505, 192 N.E.2d 920, 922; Looper v. State, Okla. Cr., 381 P.2d 1018, 1022; Commonwealth v. Fatalo, Mass., 191 N.E.2d 479; and People v. Zazzetta, 27 Ill.2d 302, 189 N.E.2d 260, 263, and citations.

Without the State's agreement to the admissibility of the results the sustaining of defendant's motion would have been futile. The evidence would not be admissible over the State's objection.

IV. Defendant's final contention is the evidence is insufficient to sustain his conviction either as a principal or accessory.

It appears the State's theory of the case was that the defendant acted as a lookout for one or both of associates. The evidence shows defendant was in the car with Rust and Weekly. They drove from Waterloo to LaPorte City. The implement company was broken into and candy bars and tools taken. The candy and tools were found in the car in the back seat where defendant was seated. At no time does defendant or his associates contend the tools and candy came from another source. The jury could properly find the candy and tools were in the possession of the defendant and his associates or any one of them. Testimony that such was not in defendant's possession comes from defendant's associate, Rust, called by the State.

He testified defendant was intoxicated to the point where he was passed out and knew nothing of the robbery. Rust testified he broke into the implement company and placed the box with the candy and tools in the rear seat. Defendant in his own behalf testified he was passed out when they left Waterloo and woke up in the squad car with handcuffs on. One of the other witnesses testified in his opinion defendant was intoxicated. The officers testified though defendant had been drinking he was not intoxicated. Defendant's sole contention is he was intoxicated to the extent he could not and actually did not act as a lookout or in any manner take part in the break-in.

There was clearly a jury question on the extent of defendant's intoxication. This is his only explanation of the possession of the stolen property.

In State v. Hobbs, 252 Iowa 439, 448, 449, 107 N.W.2d 242, 246, 247, and cases there cited, we point out that the possession of recently stolen property when it is shown the larceny took place in connection with a burglary is sufficient to warrant a conviction of breaking and entering. And the truthfulness of the explanation or denial of possession is for the jury.

The evidence was sufficient to sustain defendant's conviction on the theory of actual participation in the breaking and entering or on the theory he acted as a lookout.

■ The fact two of the State's witnesses testified defendant was intoxicated does not bind the State. As was done here, it may properly show by other witnesses other facts of the case and it is then a question for the jury to decide which to believe. State v. Hobbs, 252 Iowa 432, 439, 107 N.W.2d 238.—Affirmed.

All JUSTICES concur.