STATE of Iowa, Appellee,

v.

**Brian J. HIBDON, Appellant.**

No. 92–935.

Court of Appeals of Iowa.

June 29, 1993.

Joseph G. Bertogli, Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Robert P. Ewald, Asst. Atty. Gen., John Sarcone, County Atty., and James Ramey, Asst. County Atty., for appellee.

Heard by OXBERGER, C.J., and SACKETT, J., and KEEFE, Senior Judge.*

KEEFE, Senior Judge.

On November 28, 1991 at approximately 8:30 p.m., two black males robbed a Git–N–Go Store, which is a convenience store in Des Moines. A witness saw the men leave in an older model green Cadillac. Police officer Brent Hommer saw a car fitting this description driving on Park Avenue. Hommer observed the driver of the car was a white person and at least one of the passengers was black. When he began to follow the car a high speed chase ensued over icy streets. Eventually the Cadillac skidded into a ditch. Officer Hommer saw the passengers flee from the car.

Iowa State Highway Patrol Trooper Douglas Parrish was in contact with police officers. He received a report a suspicious individual was seen walking near S.W. 40th Street. Trooper Parrish drove to this area and saw a white individual walking between two houses. As Trooper Parrish got out of his car, the individual ran into a wooded area. Trooper Parrish gave chase and caught the individual, who was defendant Brian Hibdon.

Hibdon was taken to the Des Moines Police Department and placed in a holding cell sometime between 10:00 to 10:30 p.m. He slept for a period of time while in the cell. Shortly after midnight Detectives Halverson and Reynolds approached Hibdon and asked

---

* Senior Judge from the 1st Judicial District serving on this court by order of the Iowa Supreme Court.

if he would like to give a statement. Hibdon at first refused, but when asked again, agreed to talk to the detectives.

Hibdon was taken to an interrogation room, where he was questioned for about one-half hour. The interview was recorded on tape. At the start of the interview Hibdon was read his *Miranda* rights. Hibdon waived his rights both verbally and in writing.

During the interview Hibdon made a number of incriminating statements. He admitted he drove the car to the Git–N–Go Store and that he knew the two passengers of the car intended to rob the store. He also admitted he drove the car from the store after the robbery and had attempted to elude police officers during the chase. He stated his co-defendant George Malibiran was a member of the Vice Lords gang, and that Malibiran had coerced him into driving the car that evening. Hibdon also stated he had been drinking all day on November 28, 1991.

Prior to trial Hibdon filed a motion to suppress his statements. He claimed his confession was not voluntary because the police officers engaged in coercive conduct by giving him false promises of leniency. The district court found Hibdon's testimony concerning the promises of leniency was not credible and denied the motion to suppress.

The case proceeded to a trial before a jury. On March 25, 1992, the jury returned a verdict finding Hibdon guilty of robbery in the second degree, in violation of Iowa Code sections 711.1 and 711.3 (1991). Hibdon was sentenced to a term of imprisonment not to exceed ten years. He appealed.

I. Hibdon first contends the district court should have granted his motion to suppress evidence. He claims his confession was not voluntarily, knowingly, and intelligently made. He claims that before the tape machine was turned on the police officers engaged in impermissible coercion by giving him promises of leniency. He states he had been drinking all day, so that his will was more readily overborne by that of the police officers. He also claims that because of his intoxication he was unable to give a valid waiver of his *Miranda* rights.

■ Our scope of review in deciding the propriety of a district court's decision on the suppression of evidence is de novo. *State v. Cullison,* 227 N.W.2d 121, 127 (Iowa 1975).

■ The burden is on the State to prove that the confession was made voluntarily, knowingly, and intelligently. *Fryer v. State,* 325 N.W.2d 400, 409 (Iowa 1982). We examine the totality of the circumstances to determine the voluntariness of defendant's statements. *Van Hoff v. State,* 447 N.W.2d 665, 673 (Iowa App.1989). The test for voluntariness is whether the totality of the circumstances demonstrates that the statement was the product of an essentially free and unconstrained choice, made by the defendant at a time when his will was not overborne nor his capacity for self-determination critically impaired. *State v. Vincik,* 398 N.W.2d 788, 790 (Iowa 1987). Coercive police activity is a necessary predicate to the finding that a confession is not voluntary under the Fourteenth Amendment. *Id.*

■ A number of factors should be considered in determining the voluntariness of a confession: (1) defendant's age; (2) whether defendant had prior experience in the criminal justice system; (3) whether defendant was under the influence of drugs or alcohol; (4) whether *Miranda* warnings were given; (5) whether defendant was mentally "subnormal"; (6) whether deception was used; (7) whether defendant showed an ability to understand the questions and respond; (8) the length of time defendant was detained and interrogated; (9) defendant's physical and emotional reaction to interrogation; and (10) whether physical punishment, including deprivation of food and sleep, was used. *State v. Payton,* 481 N.W.2d 325, 328 (Iowa 1992).

■ The only two factors which are really in controversy here are whether Hibdon was under the influence of alcohol and whether the police officers used deception. As noted above, Hibdon claimed he had been drinking all day and was intoxicated at the time he was questioned. However, on the tape, detective Reynolds stated:

Your eyes aren't red. I smell nothing on your breath. You walked up here fine. You're not stuttering.

The tape recording shows Hibdon gave appropriate, responsive, and detailed answers to many questions. Apparently, Hibdon tried to avoid answering certain questions by telling the officers that he could not recall some details because he had been drinking. We agree with the district court that Hibdon was not so intoxicated that his will was overborne by the police officers.

Hibdon also claimed the officers used deception by giving him promises of leniency in order to induce him to confess. However, there is no evidence on the tape that the officers offered Hibdon any deals or promises. To the contrary, on the tape the officers specifically stated they would make no deals. As the district court pointed out, if the conversation had been different before the tape started, Hibdon had several opportunities while the tape was running to point out the alleged discrepancy. We conclude there is no persuasive evidence to show Hibdon was coerced into giving a confession by deceptive conduct by the police officers.

After examining the totality of the circumstances, we determine the State has met its burden to show Hibdon's statements were voluntary. We affirm the district court's ruling denying Hibdon's motion to suppress.

II. Hibdon's last contention is the trial court erred by giving Instruction No. 14, which defined his defense of compulsion to the jury. Based on Hibdon's testimony as to this claim, the trial judge agreed the compulsion defense should be submitted to the jury.

Section 704.10 provides:

No act, other than an act by which one intentionally or recklessly causes physical injury to another, is a public offense if the person so acting is compelled to do so by another's threat or menace of serious injury, provided that the person reasonably believes that such injury is imminent and can be averted only by the person doing such act.

Defendant requested an instruction which stated:

With regard to the element of intent as herein instructed in Instructions number [ ] and [ ], the Defendant, Brian James Hibdon, claims that at the time and place in question, he was acting under compulsion. When a person is compelled to act by another's threat or menace of serious injury, and reasonably believes that such injury is imminent and can be averted only by their doing of the act, that no public offense has been committed.

The State has the burden to prove beyond a reasonable doubt that the defendant was not acting under compulsion at the time and place in question.

The trial court gave the following instruction:

The defendant, Brian James Hibdon, claims that at the time and place in question, he was acting under compulsion. When a person is compelled to act by another's threat or menace of serious injury, and reasonably believes that such injury is imminent and can be avoided only by his doing of the act, then no public offense has been committed by that person.

Once the defense has been properly raised by the defendant, the state has the burden to disprove the defense beyond a reasonable doubt.

The first paragraph of the trial court's instruction follows the language of Iowa Criminal Jury Instruction No. 200.35. However, the trial court added the sentence, "Once the defense has been properly raised by the defendant, the state has the burden to disprove the defense beyond a reasonable doubt." Hibdon objected to the phrase "Once the defense has been properly raised by the defendant," on the ground that it changed the burden of proof and shifted it to him. His attorney properly made a record on the objection.

The Iowa law is clear that the State has the burden of disproving defendant's defense of compulsion, once defendant raises it. *State v. LeCompte*, 327 N.W.2d 221, 223 (Iowa 1982); *State v. Reese*, 272 N.W.2d 863, 867 (Iowa 1978). The Iowa law is equally clear that the following propositions apply to jury instructions:

(1). A party cannot posit error on the fact the instructions do not present a concept in exactly the same language in which the

party wishes to have it presented. *State v. Florie*, 411 N.W.2d 689, 697 (Iowa 1987).

(2). A defendant is not entitled to a particularly worded instruction where the instructions given, when viewed as a whole, adequately and correctly cover the substance of the requested instruction. *United States v. Reda*, 765 F.2d 715, 719 (8th Cir.1985).

(3). The important point is that the instructions cover the topic. *State v. Bolinger*, 460 N.W.2d 877, 880 (Iowa App.1990).

(4). A trial court is not bound to any model or form in wording instructions, and a requested instruction may be properly denied if the points it raises are otherwise substantially covered. *State v. Lindsey*, 302 N.W.2d 98, 104 (Iowa 1981).

(5). The supreme court is reluctant to disapprove uniform instructions. *State v. Jeffries*, 313 N.W.2d 508, 509 (Iowa 1981).

(6). The district court was wide discretion in formulating appropriate jury instructions. *United States v. McQuarry*, 726 F.2d 401, 402 (8th Cir.1984).

The record reflects that Hibdon gave substantial testimony about the facts he claimed supported the defense of compulsion. However, the facts brought out on cross-examination by the State showed many discrepancies. These discrepancies could certainly have persuaded the jury to deny his claim.

Finally, when a single jury instruction, or a part of one, is challenged, it is not reviewed in isolation, but rather in the context of the charge as a whole. *Elam v. Nix*, 951 F.2d 890, 891 (8th Cir.1991). On appeal, we review the adequacy of jury instructions by reviewing them as a whole. *McQuarry*, 726 F.2d at 402. Instructions are reviewed in their entirety and not piecemeal; it is sufficient if an instruction states the applicable law so that a jury composed of non-lawyers can understand it. *State v. Morrison*, 368 N.W.2d 173, 175–176 (Iowa 1985).

We have reviewed all of the instructions in this case, and in particular No. 14, which sets out the defense of compulsion. The instructions properly inform the jury of what law to apply to this case. While No. 14 might have been drawn more artfully, it does not prejudice the defendant as drawn by the trial court.

We hold the trial court properly denied both Hibdon's motion to suppress and his objection to Instruction No. 14. We find no error in defendant's conviction and sentence. We affirm the district court.

**AFFIRMED.**

OXBERGER, C.J., concurs.

SACKETT, J., specially concurs.

SACKETT, Judge (specially concur).

I concur with the result reached with the majority. However; I agree with the defendant that wording of the instruction on compulsion could have conveyed to the jury that the defendant had some burden of proof on the compulsion defense. The trial court's instruction contained the language, "Once the defense has been *properly* raised by the defendant, . . . ." (Emphasis supplied). The insertion of the word properly could convey to the jury that defendant had to show he had correctly raised the defense. The word properly should not have been included in the instruction. I concur with the majority because in this case I agree with them that the defendant was not prejudiced by the instruction as given.