# IN THE COURT OF APPEALS OF IOWA

No. 22-0711
Filed March 8, 2023


**MARK ALLEN BISHOP,**
    Applicant-Appellee,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellant.
_____


Appeal from the Iowa District Court for Dallas County, Brad McCall, Judge.


The State appeals the district court's order granting Mark Bishop a new trial as postconviction relief. **REVERSED AND REMANDED.**


Brenna Bird, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellant State.

Gina Messamer of Parrish Kruidenier Dunn Gentry Brown Bergmann & Messamer, L.L.P., for appellee.


Considered by Ahlers, P.J., and Badding and Chicchelly, JJ.

**AHLERS, Presiding Judge.**

In this postconviction-relief (PCR) proceeding, the district court granted Mark Bishop a new criminal trial, finding he received ineffective assistance of counsel in his underlying trial.  The State appeals.  While PCR proceedings are ordinarily reviewed for correction of errors at law, when, as here, the PCR application alleges ineffective assistance of counsel, the application raises constitutional issues, so our review is de novo.  *See Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021).

The events leading to this appeal stem from an ongoing dispute between Bishop, his wife, and their next-door neighbor.  The Bishops' and the neighbor's townhouses share a common wall.  The neighbor has complained to the Bishops that they play their television so loud that it disturbs her in her home.

Shortly before 10:00 p.m. on December 4, 2020, the neighbor was getting ready for bed when she again believed that the Bishops' television was too loud.  The neighbor, dressed in a nightgown and sandals, walked to the Bishops' front door, rang the doorbell, and stepped back from the door and down two steps to the sidewalk to wait.[1]  Bishop yelled from inside his house asking who it was.  The neighbor heard Bishop yell, but she did not respond.  She testified that she did not respond because she would have had to yell back, which might disturb other neighbors late at night.  She also knew the Bishops had surveillance cameras that she believed would have enabled them to see who was at the door.  After waiting

---

[1] The events we describe are gleaned from trial testimony in the underlying criminal case and from exhibits introduced in that trial.  The trial exhibits included video recordings captured by surveillance cameras inside and outside the Bishops' townhouse.

awhile without anyone coming to the door, the neighbor reapproached the front door, rang the doorbell again, and stepped back down one step. Meanwhile, inside the Bishop home, Bishop approached the front door, went to the adjoining room to look out a window, and then retrieved a handgun from somewhere inside the home not captured on video. Bishop then reapproached the front door (coming back into view of the interior surveillance camera) and opened the door while pointing the handgun directly out the front door. Very quickly after opening the door in this manner, Bishop redirected the muzzle of the handgun toward the ceiling. A verbal exchange then took place—the neighbor asked Bishop to turn down the volume of his television, and Bishop told the neighbor to "go to hell." Bishop then slammed the front door shut. The neighbor returned to her home and called law enforcement.

As a result of these events, the State charged Bishop with assault while displaying a dangerous weapon, an aggravated misdemeanor, in violation of Iowa Code sections 708.1(2)(c) and 708.2(3) (2020). A jury found Bishop guilty of the charge, and he was sentenced accordingly.

Bishop then filed an application for PCR, alleging his trial counsel was ineffective. The district court found trial counsel ineffective in two ways: (1) by failing to request jury instructions on self-defense or justification; and (2) by failing to object to testimony about an incident occurring in the parties' adjoining driveways a few days after the above-described events, during which Bishop called the neighbor a "fucking cunt." The district court granted PCR in the form of a new trial. The State appeals.

## I.     Ineffective-Assistance-of-Counsel Standards

To establish ineffective assistance of counsel, Bishop is required to prove (1) his counsel failed to perform an essential duty and (2) prejudice resulted.  *See State v. Warren*, 955 N.W.2d 848, 858 (Iowa 2021).  As to the first prong, we presume counsel performed competently and measure performance against the standard of a reasonably competent attorney.  *Id.*  An applicant claiming ineffective assistance of counsel must demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 858–59 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  As to the second prong, prejudice occurs if there is a reasonable probability that the results of the proceedings would have been different but for counsel's inadequate performance.  *Id.* at 859.  A reasonable probability of a different outcome is a probability sufficient to undermine our confidence in the outcome.  *State v. Booth-Harris*, 942 N.W.2d 562, 577 (Iowa 2020).

## II.     Failure to Request Justification Jury Instructions

Bishop asserted, and the district court found, that Bishop's trial counsel failed to perform an essential duty by failing to request self-defense or justification jury instructions.  In support of this assertion, Bishop points to his testimony that he was afraid for his life because someone rang his doorbell at 10:00 at night and would not identify himself or herself.  He claims he provided notes to his attorney before trial about his fear for his life and his testimony should have clued his attorney in to ask for self-defense or justification jury instructions.  He also points to his attorney's closing argument, during which counsel commented on Bishop's right to get the handgun and take it with him when he answered the door.  Bishop

claims that this part of the closing argument shows counsel was relying on self-defense and justification defenses but neglected to get jury instructions that would have informed the jury that Bishop had such right and given the jury a path to find Bishop not guilty based on those defenses. The district court largely adopted these arguments as support for its ruling finding Bishop's counsel ineffective.

Following our de novo review, we find Bishop's ineffective-assistance-of-counsel claim fails on both prongs.

### A.     Performance Prong

As to the performance prong, as part of the PCR proceedings, Bishop's criminal trial counsel testified that he had numerous conversations with Bishop about the events leading to the criminal charge and the possibility of asserting a justification defense. Bishop was adamant that he never displayed his handgun in a threatening manner. Based on those discussions, Bishop and his attorney agreed that their best strategy was to assert what is colloquially known as a general denial defense—which is to argue the State did not meet one or more of the elements of the offense. In Bishop's criminal trial, the jury was instructed that the State was required to prove that Bishop "displayed a dangerous weapon toward another person, [the neighbor], in a threatening manner." Bishop's general denial defense was to try to show that the State failed to prove this. Trial counsel testified that he and Bishop discussed whether to assert a justification defense along with his general denial defense. Both decided not to pursue that strategy because they did not want the incongruity of asserting both defenses. In other words, they agreed that it was bad strategy to make an argument to the jury that "I didn't do it; but, if I did, I was justified." Instead, they stuck with just the "I didn't do it" defense.

Given the neighbor's testimony that Bishop pointed the handgun at her and the video evidence that corroborates that testimony, reasonable minds could differ on whether the general denial defense was the best way to go, and other attorneys may have recommended a different strategy. But the possibility that another attorney would have followed a different strategy or the fact that the chosen strategy was unsuccessful does not rise to the level of ineffective assistance of counsel. *See State v. Majors*, 940 N.W.2d 372, 391 (Iowa 2020) ("More is required than a showing that counsel's strategy backfired or the case would have been tried differently by another attorney."); *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001) ("Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel."). Here, defense counsel and Bishop reviewed the case details together and jointly formulated the strategy to pursue a general denial defense based on Bishop's adamant assertion that he never displayed the handgun in a threatening manner. *See Majors*, 940 N.W.2d at 392 (holding that a defendant cannot base an ineffective-assistance-of-counsel claim on a decision made by the defendant). Given that strategy, it would have been contradictory to also assert a justification defense, as doing so would require acknowledging that Bishop did the act that he claimed not to have done. *See State v. Jeffries*, 313 N.W.2d 508, 509 (Iowa 1981) ("Justification as a defense is two-pronged: an admission that a prescribed act was done, and the establishment of an exculpatory excuse that takes the act out of the criminal law."). We find no breach of duty in this strategic decision not to present inconsistent defense theories. *See Johnson v. State*, No. 12-0927, 2013 WL 6405158, at *3–4 (Iowa

Ct. App. Dec. 5, 2013) (finding no ineffective assistance of counsel by pursuing a general denial defense without also pursuing a conflicting self-defense claim).[2]

We also reject Bishop's claim for another reason. Justification is an affirmative defense rather than an element of the crime of assault. *State v. Kuhse*, 937 N.W.2d 622, 627 (Iowa 2020). As such, Bishop bore the initial burden of producing sufficient evidence to support a justification instruction. *See id.* at 628. The statutory definition of justification embodies the concept that a person can use reasonable force of a necessary degree "to defend oneself or another from *any actual or imminent use of unlawful force*." Iowa Code § 704.3 (emphasis added); *see also State v. Delay*, 320 N.W.2d 831, 834–35 (Iowa 1982) (finding no error in failing to instruct on justification when the evidence did not support a finding that any force was used against the defendant). But here, there is no evidence that the neighbor threatened actual or imminent use of any force, let alone unlawful force. Even under Bishop's narrative of the events, the neighbor did nothing but ring his doorbell and not respond when he asked who it was. These actions by the

---

[2] To the extent Bishop claims that defense counsel pursued a justification defense without requesting corresponding jury instructions based on counsel's closing argument commenting on Bishop's right to bring a handgun with him to answer the door, we disagree. No one claimed that Bishop did not have a right to carry the handgun with him inside his home on his way to answer the door. So, we do not view counsel's comment on this detail as asserting a justification defense or something that needed a supporting instruction. Rather, we view it as a comment playing up how reasonable and law-abiding Bishop was being as he tried to determine who was at the door. The issue at trial was not Bishop's conduct before opening the door. The issue was whether Bishop displayed that handgun in a threatening manner once he opened it. Defense counsel never argued that displaying the handgun was justified, presumably because the defense was that such display of the weapon never happened. We see no inconsistency in counsel's comment about Bishop's right to bring the handgun with him while not asserting a justification defense.

neighbor did not threaten any actual or imminent use of unlawful force. As there was no evidence of any unlawful force being threatened or directed at anyone, there was no evidence that would have supported giving a justification instruction had Bishop's counsel requested one.[3] As Bishop was not entitled to a justification instruction even if he had requested it, counsel was not ineffective for failing to request such an instruction.[4] *See State v. Brown*, 930 N.W.2d 840, 855 (Iowa 2019) (noting that counsel has no obligation to raise an issue that has no merit).

## B.    Prejudice Prong

We also reject Bishop's claim based on the prejudice prong. To meet this prong, Bishop must establish that there is a reasonable probability that the result of his trial would have been different if counsel had requested justification jury instructions. *See Warren*, 955 N.W.2d at 859. Even if we assumed that Bishop would have received justification jury instructions if requested, we find no reasonable probability of a different trial outcome. Justification instructions would have embodied concepts of warding off threats to Bishop or others. *See* Iowa Code § 704.3; *see also* Iowa Crim. Jury Instructions 400.1 (addressing justification as the use of force to prevent unlawful force by another). There is eyewitness and

---

[3] We do not view Bishop's testimony that he was afraid for his life as evidence supporting a justification defense when the neighbor did nothing warranting that claimed fear.

[4] Here, again, Bishop conflates his right to bring the handgun with him to the door—an act that neither party asserts is unlawful—with his right to display it in a threatening manner. As no one challenged Bishop's right to bring the handgun to the door, Bishop did not need an instruction on that issue. The act of carrying was not an issue in the case. The issue at trial was whether Bishop had the right to display the gun in a threatening manner. Based on this record that shows no threat of unlawful force by the neighbor, Bishop had no such right, so justification instructions were not warranted.

video evidence that Bishop displayed his handgun to the neighbor in a threatening manner by pointing it at her, and there is no evidence that the neighbor posed any threat to Bishop or anyone else. Based on this record, we find no reasonable probability that giving justification jury instructions would have changed the outcome of the trial sufficient to undermine our confidence in the outcome. *See Booth-Harris*, 942 N.W.2d at 577.

### C. Conclusion on This Claim

As Bishop has failed to establish both prongs of his ineffective-assistance-of-counsel claims based on counsel's failure to request justification jury instructions, we find that the district court should not have granted Bishop a new trial on this basis.

## III. Failure to Object to Name-Calling Evidence

Bishop also claims ineffective assistance of counsel based on counsel's failure to object to evidence that Bishop called the neighbor a derogatory and offensive name shortly after the handgun incident. The district court granted PCR in the form of a new trial on this basis as well. We disagree with the district court.

We need not dissect the question whether failing to object to the name-calling evidence was a breach of counsel's duty. Even if it was, we find no prejudice, and we decide the issue on that basis alone. *See Ledezma*, 626 N.W.2d at 142 ("If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently.").

As noted, the evidence that Bishop displayed the handgun to the neighbor in a threatening manner was strong. The neighbor testified that Bishop pointed the gun at her when he opened the door. This testimony is corroborated by the

video from inside Bishop's home, which clearly shows him immediately point the gun out the door as soon as he opened it. While Bishop almost immediately thereafter pointed the gun toward the ceiling and away from the neighbor, it does not change the fact that the gun was initially displayed in the threatening manner described by the neighbor. Given this eyewitness and video evidence, we find no reasonable probability of a different outcome at trial if the evidence of Bishop calling the neighbor a vulgar name had not been admitted. *See Warren*, 955 N.W.2d at 859 (requiring a party claiming ineffective assistance of counsel to prove prejudice by showing a reasonable probability of a different outcome at trial). So, we find no potential prejudice based on this claim, and we reverse the district court's decision to grant a new trial on this basis.

## IV. Conclusion

Following our de novo review, we disagree with the district court's findings that Bishop's trial counsel provided ineffective assistance of counsel. Therefore, we reverse the decision of the district court granting Bishop PCR in the form of a new trial. We remand for dismissal of Bishop's PCR application.

**REVERSED AND REMANDED.**